UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LEYSE,

Plaintiff,

vs.

BANK OF AMERICA, NATIONAL ASSOCIATION,

Defendant.

Case No. 11-cv-07128

Newark, New Jersey
January 25, 2019

TRANSCRIPT OF TELECONFERENCE AND RULING
BEFORE THE HONORABLE STEVEN C. MANNION
UNITED STATES MAGISTRATE JUDGE

This transcript has been reviewed and revised in accordance with L. Civ. R. 52.1.

APPEARANCES:

For the Plaintiff:

GREG MICHAEL KOHN, ESQ.
Nagel Rice, LLP
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 618-0400
Gkohn@nagelrice.com

TODD C. BANK, ESQ.
Attorney at Law, P.C.
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
tbank@toddbanklaw.com

Audio Operator:

Transcription Service:

KING TRANSCRIPTION SERVICES
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080

Proceedings recorded by electronic sound recording (not all parties were discernible on the record); transcript produced by transcription service.

(APPEARANCES continued)

For the Defendant:

DAVID JOHN FIOCCOLA, ESQ.
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
(212) 468-8000
dfioccola@mofo.com

ADAM J. HUNT, ESQ.
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
(212) 336-4341
adamhunt@mofo.com

For the Interested Party DialAmerica Marketing Inc.:

SAMUEL FELDMAN, ESQ.
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 622-6200
sf@olss.com

JEFFREY M. GARROD, ESQ.
Orloff, Lowenbach, Stifelman & Siegel, P.A.
101 Eisenhower Parkway
Roseland, NJ 07068
(973) 622-6200
jmg@olss.com

I N D E X


| Proceeding | Page |
|---|---|
| Proceedings | 4 |
| The Court's Ruling | 16 |

(Commencement of proceedings at 10:53 A.M.)

THE COURT OFFICER: We are now on the record in Leyse versus Bank of America, Docket Number 11-cv-7128.

THE COURT: All right. Appearance by local counsel for plaintiffs?

MR. BANK: Good morning. This is not local counsel. This is Todd Bank. I'm not sure -- remembered counsel -- I thought he'd be out. I apologize that he's not. And --

THE COURT: When's the last time you spoke with your local counsel about this conference?

MR. BANK: I believe he was notified. I should say, Mr. -- defense counsel. I believe that's everybody. I'm not sure if there was --

THE COURT: Okay. I'm happy to give you time to find local counsel, because you sound like you're under water. I can barely even understand what you're saying.

MR. BANK: Is it any better, Judge?

THE COURT: That sounds a little bit better.

How much time do you need to get your local counsel on the line?

MR. BANK: I can find him, and I can call back in. I can only -- I can do.

THE COURT: Okay. We'll pause there for a moment,

because I really can't understand what you're saying.

Let me have local counsel for defendants, Bank of America?

MR. FIOCCOLA: Good morning, Your Honor. David Fioccola from Morrison & Foerster. I have Adam Hunt on the line with me as well.

THE COURT: All right. Welcome to each of you.

I'm sorry. Did we lose somebody?

(Simultaneous conversation)

MALE SPEAKER: Mr. Bank left the call just to contact his local counsel.

THE COURT: Okay. All right. Who do I have on for DialAmerica?

MR. GARROD: DialAmerica, nonparty, DialAmerica. Jeff Garrod and Sam Feldman.

THE COURT: Jeff -- spell the last name?

MR. GARROD: It's Garrod, G-a-r-r-o-d.

THE COURT: G-a-r-r-o-d.

Who initiated this call?

MALE SPEAKER: Defendants.

THE COURT: Okay. So we're going to go off the record, and I'll --

(Recess: 10:55 A.M. to 11:07 A.M.)

THE COURT: All right. We're back on the record in the matter of Leyse versus Bank of America.

Local counsel for plaintiff?

MR. KOHN: Greg Kohn from Nagel Rice.

Sorry, Your Honor. Judge Orlofsky -- a mediation. And he had me in, and I didn't realize the time.

THE COURT: All right. Spell the last name, please.

MR. KOHN: Kohn, K-o-h-n.

THE COURT: K-o-h-n.

Okay. And do I have counsel back on for Bank of America?

MR. FIOCCOLA: Yes, Your Honor. It's David Fioccola from Morrison Foerster. Adam Hunt is also on.

THE COURT: All right. And DialAmerica?

MR. GARROD: Yes, Your Honor. Jeff Garrod and Sam Feldman.

THE COURT: Okay. So pending before the Court is plaintiff's motion for reconsideration, Docket Entry 157.

Have the parties resolved this issue?

MALE SPEAKER: No, we haven't, Your Honor.

THE COURT: All right. Then I've got some questions for you, Mr. Leyse.

My first question -- not Mr. Leyse. Mr. Bank or Mr. Kohn.

This is a fee-shifting matter? Correct? If your client prevails, you expect to recover costs and fees from

the defense. Yes?

MR. BANK: No. No, Your Honor.

No, CCPA is not a fee-shifting statute.

MALE SPEAKER: Well, but the class action is.

MR. BANK: Well, it would be a -- fund, but it would -- to say it's -- the statute is not a fee shifting statute like the FDCPA, for example.

THE COURT: Okay. Well, I'm sure it's not like a -- many different statutes. But for a class action, if you prevail as a class action, do you not expect to recover costs or fees?

If you're waiving costs or fees, I'm sure Bank of America is very interested to hear that. But I'd just like it clear.

MR. BANK: Well, it wouldn't be -- it would be a common -- it wouldn't be from Bank of America. It would be, under the common fund doctrine, setting any fees -- any legal fees would be obtained from the -- not from Bank of America, but from the --

THE COURT: Could you back away from your microphone a little bit? Because it sounds like the microphone is between your teeth.

MR. BANK: -- is this better?

THE COURT: Not really. Are you on a speakerphone or speaking directly into a --

MR. BANK: No.

THE COURT: -- a handheld phone or --

MR. BANK: Well, it's a -- phone.

THE COURT: That sounds a little bit better, whatever you just did there.

So -- okay. So you're not expecting to receive or recover costs or fees from Bank of America in this action?

MR. BANK: Well, costs, perhaps, but small costs that it might be, but fees, no.

THE COURT: Okay.

MR. FIOCCOLA: Your Honor, this is David Fioccola from Bank of America. That's on the record. Right? I just want to make sure.

THE COURT: We are on the record, yes. He's not expecting to recover fees.

MR. FIOCCOLA: All right. Not expecting recovery of fees. That's very helpful. Thank you.

THE COURT: Okay. All right.

Mr. Bank, please. It's your motion. Go ahead. If you have anything to add to your paperwork. I've reviewed the paperwork. It's pretty much the same paperwork that I had with your first motion. But if there's anything else you would like to add to it.

MR. BANK: I think I said everything in the motion. And I think it's -- I think --

THE COURT: Okay.

MR. BANK: -- very clearly. I just would only note that for about the third or fourth time, DialAmerica has never even purported to refute what we -- what we've explained in terms of their -- especially not -- 32,000 -- it's -- 13,000 that I've explained on pages 7 and 8 of their -- the Court by virtue of its ruling, found that anything above -- anything above 21,866 would be significant, and, therefore, given that the real expenses are not even that much -- and if you want to add the fact that DialAmerica was requested but refused to provide any financial information to the Court that would help the Court make a proper assessment, the plaintiffs shouldn't have to pay anything. There's no basis at all to impose any costs on the plaintiff, given those -- given those two facts, especially the first one.

THE COURT: Okay. Thank you very much, Mr. Bank.

Mr. Feldman?

MALE SPEAKER: Yeah.

MR. GARROD: This is Jeff Garrod, Your Honor.

THE COURT: Okay. Jeff Garrod.

Mr. Garrod, my question for you is does Rule 45 protect your client, a nonparty, from all expense or just significant expense?

MR. GARROD: It provides for protection from

significant expense, which has been determined by Your Honor in your first opinion --

THE COURT: I know what your papers say. So you're agreeing that it does not protect your client from all expense. Okay?

MR. GARROD: Well --

THE COURT: So if the Court -- let me finish.

MR. GARROD: I don't agree with that, Your Honor. It protects us from significant expense, and Your Honor has determined that 32,800 is a significant expense. That's in your opinion.

THE COURT: I know. I wrote the opinion.

(Simultaneous conversation)

THE COURT: Mr. Garrod? I wrote the opinion, and I read your papers. So I know -- I know your position.

Your position is the Court found 32-8 is a significant expense. The Court did not find that 20,000 is a significant expense.

Would you agree there?

MR. GARROD: No. I don't think that -- I didn't -- I didn't read that in your opinion at all.

THE COURT: Exactly. I did not find that. I did not find $20,000 to be significant expense. Correct?

MR. GARROD: No, you found 32,800 to be a significant expense.

THE COURT: Yes. And I reduced --

(Simultaneous conversation)

THE COURT: -- Mr. Garrod, please -- finish.

And I reduced your client's share of that 32,000 to approximately -- what? -- 21? $22,000?

MR. GARROD: Well, Your Honor, as we explained in our brief, we think Rule 45 and it's indicated in a Third Circuit opinion we cited to Your Honor that the 32 -- is all -- is all covered by the rule. It's all significant expense, and, you know, it's all since the rule was amended. I think the plaintiff's argument, you know, talks about the case law that precedes the amendment to Rule 45. And the Third Circuit opinion, which is -- the short one, but very clear that the entire significant expense would be covered.

THE COURT: Okay.

So I ask you this, Mr. Garrod, would $5,000 be a significant expense for DialAmerica?

MR. GARROD: I think under the circumstances -- I mean, I don't know the answer to that, Your Honor. We the cost -- material is 32-8. It's not five.

THE COURT: So you're not answering the Court's question. So my question is this: Mr. Bank said the Court has not received any information from you or from DialAmerica as to its ability to pay. Why shouldn't the Court order a hearing and compel DialAmerica to be here, whether it be

closed hearing, open hearing, we could decide that later, why shouldn't the Court order DialAmerica to be here to present information to the Court as to its annual income, its net worth, its ability to pay. Why shouldn't I do that?

MR. GARROD: Because that's not a criteria, Your Honor. Under the law as it says -- under the rule as it stands today, that's not a criteria. And that would be so counterproductive to -- we're a nonparty. Okay? And it would be so counterproductive to the purpose of the rule -- okay? -- which is to protect a nonparty from expending time, effort, and money to obtain -- discovery that the plaintiff, you know, probably should have gotten from Bank of America, because whatever we had, we gave to Bank of America. And I understand it was many years ago, and Bank of America, you know -- reports of events may not have maintained that. But that's not -- you know, that's not our fault. And that's not our issue.

And to have a hearing on, you know -- we -- we submitted an affidavit -- Your Honor's opinion said 32-8 is a significant expense. That's, you know -- not only the Third Circuit but other courts have said, under the amended Rule 45, that's all, then, payable by the party who served the subpoena.

THE COURT: So, Mr. Garrod, you understand here, we're making possible case law that would have to help

attorneys in future cases.

So how is it that you believe the Court should determine significant expense if not to look at the actual nonparty and their ability to pay? You're saying that the Court should --

(Simultaneous conversation)

THE COURT: I'm not finished, Mr. Garrod. Do not cut me off again.

You're saying that the Court should never look at the ability to pay of a nonparty?

MR. GARROD: No, no. I'm not -- I'm saying the ability to pay is not one of the criteria that the Court should be considering under the amended Rule 45, because under that circumstance, then you would never have the situation where the party, the nonparty served with a subpoena, shouldn't pay some part of the cost. And that's clearly not what the cases that have decided this issue under the amended rule have ever determined.

So we -- you know, the ability to pay is not the criteria. Okay?

THE COURT: Okay. Well, then, what is your criteria for determining what is a significant expense for a particular nonparty? How do you -- how do you --

(Simultaneous conversation)

THE COURT: -- suggest the Court do that?

MR. GARROD: We submitted a declaration -- okay? -- which -- which said the cost is 32-8. That would be the cost retrieve this material. And Your Honor, you know, found that the 32-8 --

THE COURT: Mr. Garrod, if you don't want to answer my question, just tell me you don't want to answer my question.

MR. GARROD: Oh, I am -- I am answering.

THE COURT: No, you're not. No, you're not. What you're telling me --

MR. GARROD: Well --

THE COURT: -- is that you provided a cost estimate. You didn't -- you didn't give me anything to tell me whether that's a significant cost or an insignificant cost. All you did was you provided a cost estimate. And then you're saying, because Judge Mannion found that to be significant, therefore, what? In every case -- in every case, the standard will be let's go back to what Judge Mannion did in this one instance? We can't do that. That's not workable. You're not providing the Court with anything.

So clearly you have nothing on this point.

MR. GARROD: Your Honor -- well, that's -- Your Honor, we provided you originally with a declaration that the 32-8 would be the expense. And, you know -- and Your Honor understood -- understood -- Your Honor found that

that was a significant expense, the 32-8, based on our declaration. And Your Honor also made some statements in the opinion that, you know, you understood that it would be, you know, very time-consuming, it would take weeks to do, and very substantial and arduous, and that's all based on the declaration that was submitted to Your Honor.

THE COURT: Got it. Thank you. If you've got nothing new to add, thank you.

All right. Anything from Bank of America, just to make clear?

MR. FIOCCOLA: Yes, Your Honor, this is David Fioccola. And, I think, if the Court wants to hear us on this, I can talk for a couple of minutes. Maybe it would be helpful?

If Your Honor wants to hear from us? Or --

THE COURT: I'm not inviting it. Do you have something that you're burning to say?

MR. FIOCCOLA: No -- Your Honor. No --

THE COURT: Got it.

MR. FIOCCOLA: -- no. That's all I would -- okay.

THE COURT: All right.

Mr. Kohn or Mr. Bank, it was your motion. Last word, anything to add?

MR. BANK: I'm sorry. This is Todd Bank.

No, I think I -- if the Court has questions, I'll

do my best to answer them in court.

THE COURT: Okay. You can put your phones on mute while the Court delivers its decision.

The matter comes before the Court upon plaintiff Mark Leyse's motion for reconsideration of the Court's order requiring that Mr. Leyse bear one third of the expected cost for nonparty DialAmerica to comply with his subpoena. Mr. Leyse argues that DialAmerica should bear all of the costs, and DialAmerica opposes, but in turn, argues that Mr. Leyse should bear all of DialAmerica's costs of compliance with the subpoena.

The Court has considered their respective submissions and heard oral argument. Neither Mr. Leyse nor DialAmerica have shown any intervening change in the controlling law, nor have they presented any new evidence that was not available to the Court when the Court made its initial decision. And neither have demonstrated any need to correct a clear error of law or fact or prevent manifest injustice.

Mr. Leyse seeks reconsideration of the Court's decision, pursuant to Rule 59(e), which allows a party to seek alteration of a judgment. That rule does not pertain to reconsideration of an interlocutory order such as the issue before this Court. Nonetheless, a district court has the inherent authority to reconsider its own interlocutory

orders.

This district -- this district's local rules govern motions for reconsideration under Local Civil Rule 7.1(i). Motions for reconsideration require the moving party to set forth "concisely the matters or controlling decision which counsel believes the Court has overlooked." A motion for reconsideration under Rule 7.1(i) is extremely limited procedural vehicle, and requests pursuant to the rule are to be granted sparingly. Reconsideration is not appropriate where the motion only raises a party's disagreement with the Court's initial decision.

The scope of reconsideration under Rule 59(a) would similarly be extremely limited. That's Blystone v. Horn, 664 F.3d 397 at 415 (3d Cir. 2011). It is not an opportunity for a second bite at the apple.

Such motions are intended only to correct manifest errors of law or fact or to present newly discovered evidence. Stated otherwise, to prevail on a motion for reconsideration, the moving party must show at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the Court made its initial decision; or (3) the need to correct a clear error of law or fact or prevent manifest injustice.

Mr. Leyse essentially argues that DialAmerica's

actual expenses are only $13,360, and given the Court has already ordered DialAmerica to bear 66 percent of its expenses, equalling approximately $21,000, assuming a baseline of 32-8, then the cost of 13,360 is not significant under the Rule 45 standard. Thus, DialAmerica should be ordered to bear its entire expenses.

However, Mr. Leyse already made this argument in his original informal motion to compel. And the Court rejected Mr. Leyse's cost estimate.

There is no new argument here and no claim that this information comes from newly available evidence. Mr. Leyse's motion is nothing more than a disagreement with the Court's prior decision and, thus, improper for reconsideration.

Likewise, DialAmerica has opposed Mr. Leyse's motion for reconsideration, in response to the motion for reconsideration, by arguing that the Court committed legal error by not shifting one hundred percent of DialAmerica's expenses to Mr. Leyse after the Court found the cost of 32-8 to be significant.

However, DialAmerica has blindly ignored that the Rule 45 mandate requiring the Court protect nonparties from significant expense does not require the requesting party to bear the entire cost of compliance. Mr. Leyse must only bear "at least enough of the cost of compliance to render the

remainder nonsignificant," citing Legal Voice v. Stormans Inc., 738 F.3d 1178 at 1184 (9th Cir. 2013). This was clearly stated in the Court's prior decision and again here. Thus, DialAmerica's position also has no merit.

Moreover, DialAmerica has been willfully silent on its annual revenue and its ability to pay. The Court could consider holding a hearing on that issue, but instead finds from the available evidence within the docket, of course, reserving the right to hold such a hearing if the issue is not resolved, that DialAmerica -- to DialAmerica, $5,000 is not a significant expense. Neither is 10,000, 15,000, or even 20,000. The Court found that 32,800 was a significant expense and therefore ordered Mr. Leyse to bear one third of that expected cost and, accordingly, reduced DialAmerica's burden to a point that was not significant expense for it.

In conclusion, there is no meritorious base of reconsideration of the Court's order, as reconsideration is not appropriate where the motion only raises the party's disagreement with the Court's initial decision.

Mr. Leyse's request for reconsideration is denied. An appropriate order shall be issued.

Counsel can unmute.

We'll go off the record.

(Recess: 11:25 A.M. to 11:26 A.M.)

THE COURT: Counsel has been asked -- Mr. Bank has

been asked what discovery has been done in this case since November.

Mr. Bank, what discovery has been done since November?

MR. BANK: First, I want to just reiterate, it was just stated off the record, which is that I -- I stated to the judge that I want to be on the record --

THE COURT: You're on the record, Mr. Bank.

Proceed. I have other matters.

MR. BANK: May I -- may I please -- I'm proceeding. I'm proceeding --

THE COURT: To answer my question.

MR. BANK: Yes, I want to reiterate what was said off the record so that you don't continue to abuse your authority. Okay?

THE COURT: Abusing my authority?

MR. BANK: Excuse me, Judge. Excuse me, Judge.

THE COURT: Do not yell --

MR. BANK: -- my right.

THE COURT: Do not yell at me, Mr. Bank.

MR. BANK: Well, I feel like I had to so you would hear me. I have my rights --

THE COURT: Mr. Bank --

MR. BANK: -- and I'm going to --

(Simultaneous conversation)

THE COURT: Do not yell.

MR. BANK: -- I intend to exercise my rights, right now. We went on -- we went off the record.

THE COURT: Continue. Continue to make the record, Mr. Bank. Go right ahead.

MR. BANK: -- off -- we went off -- you're not going to let me speak. Right? You're not going to let me speak on the record, because you want to cover up your abuse of your power. Isn't that right, Judge? Isn't that right?

THE COURT: Continue, Mr. Bank. Continue.

MR. BANK: This is about covering your abuse of authority, isn't it, Judge?

THE COURT: Continue on, Mr. Bank.

MR. BANK: Thank you. I will. We -- after Judge read the ruling that he probably made all before he conducted this phony oral argument that we just had for half an hour, the judge said we were going off the record. I stated that I wished to continue to be on the record, and the judge said we -- and we went back and forth on that for a minute or so. And then Judge then -- he stated -- and I don't -- I don't know what the exact words were, and unfortunately, it's not on the record, which itself I consider to be abusive in those circumstances. But in any event, upon my insistence that we go on the record, Judge Mannion said something to the effect of that I would be subjecting myself to sanctions. He used

the word "sanctions." If Judge Mannion wants to repeat what he said earlier so it can be -- so it can be more precise, I actually would appreciate that.

THE COURT: Yes, Mr. Bank. I said I would allow you to go on the record to make a record of sanctionable conduct, if you wish. And you're doing that. So please continue.

MR. BANK: Thank you, Judge. I don't know what the sanctionable conduct was, but feel free to explain it to me.

THE COURT: Are you finished, Mr. Bank?

MR. BANK: Feel free to explain to me the sanctionable conduct --

THE COURT: Mr. Bank, I don't answer to you.

MR. BANK: Yes, I just -- I'm -- of course not. Why would you --

(Simultaneous conversation)

THE COURT: -- my question for you, Mr. Bank --

(Simultaneous conversation)

MR. BANK: -- authority.

(Simultaneous conversation)

THE COURT: Mr. Bank, do not cut me off. You're wearing my patience thin.

(Simultaneous conversation)

MR. BANK: -- me speaking. Go ahead.

(Simultaneous conversation)

THE COURT: My question for you, what discovery have you done since November? That is the question.

Which we could have done off the record --

MR. BANK: Since November?

THE COURT: Yes, what discovery have done since November?

MR. BANK: I don't recall offhand what discovery has been done since November, because we've been fighting this battle for -- with DialAmerica.

THE COURT: Thank you.

MR. BANK: -- discovery -- I'm not -- I'm not finished.

THE COURT: Yes, you are. Thank you.

MR. BANK: No, I wasn't finished.

THE COURT: Mr. Feldman --

(Simultaneous conversation)

MR. BANK: No, I wasn't finished. No, I wasn't -- not going to -- up anything. I'm not finished. I am not finished.

So we've been conducting --

THE COURT: Mr. Bank, again, you're crossing the line --

(Simultaneous conversation)

MR. BANK: -- that -- let me finish, please.

(Simultaneous conversation)

THE COURT: Mr. Bank --

(Simultaneous conversation)

MR. BANK: -- which is DialAmerica --

(Simultaneous conversation)

THE COURT: -- I asked you what discovery you've done.

(Simultaneous conversation)

MR. BANK: -- I don't know what since -- Judge, please don't cut me off. I don't cut you off. You asked me not to cut you off. I ask you for the same courtesy.

THE COURT: Mr. Fioccola --

(Simultaneous conversation)

MR. BANK: -- same courtesy you demand. So, again, I think --

(Simultaneous conversation)

THE COURT: Mr. Fioccola --

(Simultaneous conversation)

MR. BANK: -- the only discovery has been vis-à-vis DialAmerica, so I'm not sure other than the --

(Simultaneous conversation)

THE COURT: I think you need to speak to your local counsel, Mr. Bank.

Mr. Fioccola, what discovery has been done --

(Simultaneous conversation)

THE COURT: -- since November?

(Simultaneous conversation)

MR. BANK: -- abuse of power, Judge. It's duly noted. Hopefully -- hopefully on the record.

THE COURT: Mr. Fioccola, what discovery has been done since November, if any?

MR. FIOCCOLA: Your Honor, with respect to Bank of America, there's been no discovery. And if I recall correctly -- and Mr. Hunt will correct me if I'm wrong, discovery issue, Bank of America, has been closed since before all of the depositions that Mr. Bank took of DialAmerica. And so the only open issue was the current discovery motion that Your Honor just decided. And we had discussed a couple conferences ago that once this issue on discovery was resolved at the appropriate time, coming up with a schedule for simultaneously moving for summary judgment and class certification.

THE COURT: All right. Thank you, sir.

Mr. Garrod or Mr. Feldman, what discovery, if any, has been done as to DialAmerica since November?

MR. GARROD: Nothing, Your Honor. Mr. Fioccola --

THE COURT: Nothing as to DialAmerica?

MR. GARROD: Well, other than the motion. The only discovery -- we're a nonparty, Your Honor, as you know. But the only discovery relates to the subpoena, which was the subject of the motion which Your Honor decided, and then

there was the reconsideration motion, which Your Honor just decided now.

THE COURT: Okay.

MR. GARROD: So there was nothing --

MR. FIOCCOLA: Yeah, and I think, Your Honor -- this is -- this is David Fioccola again. I think that the setup here, because I know this goes back over a year, they had taken -- Mr. Bank had taken the deposition of, I think, five or six DialAmerica employees, which culminated, I think, in the deposition of the CEO. And that was, I think, mostly directed at trying to get the information that Mr. -- that was the subject -- was the subject of Mr. Bank's motions. So that was, kind of, I think, the only open issue with respect to discovery that was left for -- because he has already deposed everyone at company. So it was really just this last issue about -- open that was keeping discovery, you know -- quote/unquote open for purposes of this -- this motion.

THE COURT: Okay. So after the Court's decision at Docket Entry 155, DialAmerica requested a stay pending appeal. That request was denied. The case has not been stayed. Discovery is to continue.

So, Mr. Garrod or Mr. Feldman, have you received a deposit from plaintiff towards the cost of the discovery?

MR. GARROD: No, Your Honor. And I think Mr. Bank's motion for reconsideration stayed the time to

appeal while Your Honor's first decision --

THE COURT: Well, it tolled the time. It didn't stay the case.

MR. GARROD: Well, it tolled. It doesn't stay -- yeah, but we have not received a deposit. That's -- that answers your question.

THE COURT: Thank you. It does.

Okay. Anything else for DialAmerica today?

MR. GARROD: No.

THE COURT: Anything else for Bank of America today?

MR. FIOCCOLA: No, Your Honor.

THE COURT: Anything else Mr. Leyse today?

MR. BANK: No.

THE COURT: Okay. Thank you very much. We're adjourned.

(Conclusion of proceedings at 11:33 A.M.)

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 28 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

S/ *Sara L. Kern* 31st of January, 2019

Signature of Approved Transcriber Date

Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080