**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK LEYSE, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>Defendant. | Civil Action No. 11-7128 (SDW) (SCM)<br><br>**OPINION**<br><br>March 13, 2020 |

**WIGENTON**, District Judge.

Before this Court are Defendant Bank of America, National Association's ("Defendant" or "BoA") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Motion to Strike Plaintiff Mark Leyse's ("Plaintiff" or "Leyse") Expert, as well as Plaintiff's Motion for Class Certification pursuant to Rule 23 and Motion to File a Second Amended Complaint. Jurisdiction is proper pursuant to 28 U.S.C § 1331 and § 1332(d)(2)(A). Venue is proper pursuant to 28 U.S.C. § 1391. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion to Strike, Plaintiff's Motion to Amend, and Plaintiff's Motion for Class Certification are **DISMISSED AS MOOT**.

## I. FACTUAL AND PROCEDURAL HISTORY

This case, and two related cases in other jurisdictions, began with a telemarketing phone call on March 11, 2005 (the "Call" or the "March 11th Call"). (D.E. 222-2 ¶¶ 6, 33–34, 40–41.)[1] DialAmerica Marketing, Inc. ("DialAmerica"), on behalf of Defendant, called the residential telephone line that Plaintiff shared with his roommate, Genevieve Dutriaux. (*Id.* ¶ 6.) When the Call was answered,[2] DialAmerica did not have a sales representative available to handle the call and, therefore, played the following prerecorded message: "This call is on behalf of Bank of America at 1-800-201-6872 for telemarketing purposes. We're sorry we missed you and we will try calling back at another time." (*Id.* ¶ 7.)

Plaintiff was a BoA customer at the time of the Call and had been for nearly a decade. (*Id.* ¶¶ 46–47.) Plaintiff also worked as an investigator for his counsel of record, Todd C. Bank, at the time of the Call, helping him prepare TCPA lawsuits. (*Id.* ¶ 9.) In that role, Plaintiff called companies to determine, *inter alia*, the number and frequency of the calls they made. (*Id.* ¶ 11.) During these investigative calls, Plaintiff used a false name, withheld the true purpose of the calls, and secretly recorded the calls. (*Id.* ¶¶ 12–13.) He then provided the recordings to Mr. Bank to use in TCPA litigations such as this one. (*Id.*) For performing "well over a hundred" investigative calls, Plaintiff was paid $60 an hour and earned between $40,000 and $75,000. (*Id.* ¶¶ 10, 14.)

Following the Call, Plaintiff placed more than 20 calls to DialAmerica; Plaintiff recorded the calls and provided the recordings to Mr. Bank. (*Id.* ¶¶ 21–26; D.E. 227-1 ¶¶ 21–26.) During

---

[1] Record citations in this opinion are generally to the parties' Local Rule 56.1 Statements, namely, Defendant's Statement of Material Facts Not in Dispute (D.E. 222-2), Plaintiff's Response to Defendant's Statement (D.E. 227-1), Plaintiff's Supplemental Statement (D.E. 227-2), and Defendant's Response to Plaintiff's Supplemental Statement (D.E. 230-1), as well as the record citations contained therein.

[2] It is unclear if Plaintiff answered the Call. He claimed to have answered the Call himself at a June 2017 deposition, but told DialAmerica representatives in March 2005 that the Call went to his answering machine. (D.E. 222-1 at 12; D.E. 222-2 ¶ 28.) However, this fact issue is immaterial for the purposes of this motion. *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (holding that a single prerecorded voicemail can incur TCPA liability).

these calls, Plaintiff used a false name and employer and inquired about the service DialAmerica provided, including the numbers it called, the dialing system it used, the number of recorded messages it left per day, and whether the representatives knew that the March 11th Call violated the Telephone Consumer Protection Act ("TCPA"). (D.E. 222-2 ¶ 27, 29.)[3]  Notably, when twice asked by DialAmerica representatives if he wanted to be added to their Do-Not-Call list, Plaintiff declined. (*Id.* ¶ 30.)

Plaintiff filed this suit on December 5, 2011. (D.E. 1.) The First Amended Class Action Complaint ("FAC") contains a single count for violation of the TCPA. (D.E. 93-1 ¶¶ 19–22 (citing 47 U.S.C. § 227(b)(1)(B)); *see also* D.E. 93–94.) Plaintiff does not allege that he suffered any annoyance or nuisance from the Call and seeks only statutory damages. (D.E. 93-1 ¶¶ 43–45.)

As the Third Circuit observed in this case, almost seven years ago, "[r]arely has one phone call led to so much litigation." *Leyse v. Bank of Am., Nat. Ass'n*, 538 F. App'x 156, 157 (3d Cir. 2013). Because the lengthy procedural history of the case (and its related cases) was summarized in this Court's 2016 opinion denying Defendant's motion for judgment on the pleadings, this Court refrains from repeating it here. *See Leyse v. Bank of Am.*, 2016 WL 5928683, at *1–3 (D.N.J. Oct. 11, 2016); *see also Leyse v. Bank of Am., N.A.*, 2012 WL 2952428 (D.N.J. July 18, 2012), *vacated*, 538 F. App'x 156 (3d Cir. 2013), *on remand*, 2014 WL 4426325 (D.N.J. Sept. 8, 2014), *vacated*, 804 F.3d 316 (3d Cir. 2015). Following prolonged discovery, Defendant filed, and the parties briefed, the instant motions. (D.E. 221–22, 227–33, 237–38.)

## II. <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The

---

[3] Plaintiff disputes that he took these actions in his capacity as a paid investigator for Mr. Bank. (D.E. 227-2 ¶ 1.)

"mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Rule 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party

4

is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III.    DISCUSSION

At the time of the Call, the TCPA prohibited making:

> any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B) (effective December 16, 2003 through July 8, 2005). Paragraph (2)(B) stated that the Federal Communications Commission ("FCC"):

> (B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the [FCC] may prescribe. . .
>   (ii) such classes or categories of calls made for commercial purposes as the Commission determines--
>     (I) will not adversely affect the privacy rights that this section is intended to protect; and
>     (II) do not include the transmission of any unsolicited advertisement.

47 U.S.C. § 227(b)(2)(B). Defendant argues that summary judgment is appropriate because: (1) Plaintiff lacks standing to sue, (2) the Call was exempt from the TCPA under FCC rules at the time

5

because the parties had an established business relationship, and (3) the content of Defendant's prerecorded message did not violate the TCPA under FCC rules at the time. This Court analyzes these arguments in turn and finds that each is a separate basis for its grant of summary judgment.

**A. Standing**

*1. Article III Standing*

Standing to sue is a doctrine that ensures that federal courts do not exceed the constitutional limits on their jurisdiction, which extends only to "Cases" and "Controversies." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing U.S. Const. Art. III § 2). "[T]he 'irreducible constitutional minimum' of standing consists of three elements[:] The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)) (other citation omitted).

Defendant argues that Plaintiff lacks constitutional standing under Article III because he cannot prove injury in fact. "Injury in fact is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547–48 (some punctuation omitted) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. "[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," in which case, a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Id.* (citations omitted).

However, where a bare procedural violation results in no "harm" and no "material risk of harm," it is not concrete. *See id.* at 1550 (vacating and remanding to determine whether the "particular procedural violations alleged . . . entail[ed] a degree of risk sufficient to meet the concreteness requirement").

In this Circuit, "[w]hen one sues under a statute alleging 'the very injury the statute is intended to prevent,' and the injury 'has a close relationship to a harm traditionally providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (some punctuation omitted) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639–40 (3d Cir. 2017)).[4] In *Susinno*, the Third Circuit held that the plaintiff had pleaded a concrete injury where she alleged she received a prerecorded voicemail, finding that the plaintiff's assertion of "'nuisance and invasion of privacy' resulting from a single prerecorded telephone call" was the "very harm that Congress sought to prevent," and finding that the plaintiff's claim closely related to the traditional claim for intrusion upon seclusion. *Id.* at 351–52.

Here, notably, Plaintiff does not assert, nor has he put forward any evidence to show, that he suffered nuisance, annoyance, inconvenience, wasted time, invasion of privacy, or any other such injury. *See Lujan*, 504 U.S. at 561 (noting that when opposing a motion for summary judgment, a plaintiff "must 'set forth' by affidavit or other evidence 'specific facts'" establishing an "injury resulting from the defendant's conduct." (citations omitted)). Nor could he, because the record evidence clearly shows that he welcomed such calls in his role as a paid investigator aiding his counsel in the preparation of TCPA lawsuits. (*See* D.E. 222-2 ¶¶ 9–15.) No other plausible

---

[4] The rule is one of inclusion, not exclusion. *See Susinno*, 862 F.3d at 351 ("We do not, and need not, conclude that intangible injuries falling short of this standard are never concrete. Rather, we simply observe that all intangible injuries that meet this standard *are* concrete." (emphasis in original) (internal citation omitted)).

7

inference can be drawn from the 20+ follow-up calls he made to DialAmerica, the types of questions he asked DialAmerica's representatives, his use of a false name and employer, his secret recordings of the calls, his submission of those recordings to his counsel, and, especially, his refusal to be added to DialAmerica's Do-Not-Call list when he was twice given the opportunity. (*Id.* ¶¶ 20–32.) On these facts, no reasonable jury could find that Plaintiff suffered an Article III injury. Having asserted only a procedural violation that resulted in no harm and no material risk of harm, (*see* D.E. 222-2 ¶ 44), Plaintiff fails to meet his burden of establishing the elements of standing and summary judgment is therefore warranted. *See Lujan*, 504 U.S. at 561; *Spokeo*, 136 S. Ct. at 1550 (stating that plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III" (citation omitted)).[5]

### 2. Statutory Standing

In the alternative, summary judgment is also appropriate because plaintiff lacks statutory standing. *See Leyse*, 804 F.3d at 324 (3d Cir. 2015) ("Article III is not the only barrier faced by potential plaintiffs."). "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.' . . . . [It is] unlikely that 'Congress meant to allow all factually injured plaintiffs to recover.'" *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014)). On examining the TCPA's zone of interests, the Third Circuit concluded that:

> It is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy. This does not mean that all those within earshot of an unwanted robocall

---

[5] Furthermore, as discussed more fully in Section III.B, *infra*, Plaintiff in fact *consented* to be called by Defendant pursuant to the TCPA's "established business relationship" exemption. Plaintiff actively maintained a bank account with Defendant at the time of the March 11th call and, therefore, should not have been surprised to receive a call from Defendant. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 20 FCC Rcd. 3788, 3798 ¶ 26 (Feb. 18, 2005) ("2005 FCC Order") ("Consumers should not be surprised to receive a call from a bank at which they have an account. . . .") Such calls were exempt from TCPA liability in March 2005 because a call made to "someone with whom a prior business relationship exists does not adversely affect consumer privacy interests." *Tel. Consumer Prot. Act of 1991*, 77 Fed. Reg. 34233-01, 34237 ¶ 19 (June 11, 2012) ("2012 FCC Order"). Thus, because Plaintiff consented to calls from Defendant, he cannot plausibly claim that he was injured by Defendant's call.

> are entitled to make a federal case out of it. Congress's repeated references to privacy convince us that a mere houseguest or visitor who picks up the phone would likely fall outside the protected zone of interests. On the other hand, a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect.

*Id.* at 326. As explained above, Plaintiff has not established that he suffered any "nuisance [or] invasion of privacy," *see id.*, and the record suggests instead that he welcomed and consented to the March 11th Call. In this sense, Plaintiff had less of an "interest in [the] privacy, peace, and quiet that Congress intended to protect" than even the houseguest who picks up an unwanted call—someone who does *not* fall under the TCPA's zone of interests. *See id.* Summary judgment is therefore also warranted for lack of statutory standing.

### B. Established Business Relationship

Even if Plaintiff has standing to litigate his claim, Defendant is protected from TCPA liability for the March 11th Call under the "established business relationship" exemption. Under FCC regulations in effect in March 2005, the TCPA did not apply to calls made by a business to customers with whom that business had an established relationship in the 18 months preceding the call. *See* 47 C.F.R. § 64.1200(a)(2)(iv) (effective through May 12, 2005); 2005 FCC Order, 20 FCC Rcd. at 3797–98 ¶ 26.[6, 7] The 2005 FCC Order explicitly stated that "financial agreements, including bank accounts," constituted ongoing relationships that permitted a company "to contact

---

[6] At the time of the Call, the term "established business relationship" was defined as:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(3) (effective through May 12, 2005).

[7] In 2012, the FCC eliminated the established business relationship exemption with respect to telemarketing robocalls to residential lines. *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1837 (2012). There is no indication in the 2012 order that it was intended to apply retroactively, nor do courts generally apply FCC regulations retroactively. *See, e.g.*, *Roberts v. PayPal, Inc.*, 621 F. App'x 478, 479 (9th Cir. 2015); *Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52, 55 n.2 (2d Cir. 2018), *as amended* (Jan. 9, 2018).

the consumer to, for example, notify them of changes in terms of a contract or *offer new products and services* that may benefit them." *Id*. (emphasis added). Because Plaintiff was an active BoA customer at the time of the March 11th Call, (D.E. 222-2 ¶ 47), the Call was exempt from the TPCA under the established business relationship exemption. *See, e.g.*, *Zelma v. Conway*, Civ. No. 12-256, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013) (dismissing TCPA claim after finding that an established business relationship existed where plaintiff's wife elected to receive a free magazine subscription from defendant).

Plaintiff argues that the claimed exemption does not apply here because Defendant intended to call Plaintiff's roommate with whom it did not have an established business relationship. (D.E. 227 at 31–34.)[8] The distinction appears meaningless, however, following the Third Circuit's 2015 decision in this case, holding that it is the actual recipient of the call (intended or not) who is the "called party" under the TCPA. *Leyse*, 804 F.3d at 325–27. Because the TCPA does not apply to calls made "with the prior express consent of the *called party*," 47 U.S.C. § 227(b)(1)(A) (2005) (emphasis added), and an established business relationship effectively

---

[8] Plaintiff also argues that the call was not exempt because it was not made "pursuant" to the parties' established business relationship (*i.e*., the relationship was not Defendant's reason for the call). (*See* D.E. 227 at 34 (quoting *Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 68 Fed. Reg. 44144-01, 44158 ¶ 80).) The quoted FCC order states:

> Moreover, the [established business relationship] exemption focuses on the relationship between the sender of the message and the consumer, rather than on the content of the message. It appears that consumers have come to expect calls from companies with whom they have such a relationship, and that, under certain circumstances, they may be willing to accept these calls. . . . Therefore, we retain the exemption for established business relationship calls from the ban on prerecorded messages. Telemarketers that claim their prerecorded messages are delivered ***pursuant*** to an established business relationship must be prepared to provide clear and convincing evidence of the existence of such a relationship.

68 Fed. Reg. at 44158 ¶ 80 (emphasis added). This language reinforces the application of the exemption, because "the exemption focuses on the relationship between the sender of the message and the consumer" who receives the call, and a caller asserting the defense need only present "clear and convincing evidence of the existence of such a relationship." *Id*. The order does not discuss the purpose of the call or require any showing with respect to purpose in order to utilize the defense.

establishes consent, *see* 2012 FCC Order, 77 Fed. Reg. at 34237 ¶ 19, the exemption applies here under the plain language of the statute and regulation.[9]  Summary judgment is therefore warranted.

### C. Content of the Call

Finally, even if Plaintiff has standing to sue and the established business relationship exemption does not apply, summary judgment must still be granted because the content of the Call itself did not violate FCC regulations applicable at the time regarding abandoned telemarketing calls and dual-purpose calls.

The parties agree that the initial Call to Plaintiff contained a prerecorded message which was lawful (and required) under applicable abandoned call regulations.[10, 11]  (FAC ¶ 10, D.E. 227-1 ¶ 8.) Such regulations stated, in relevant part:

> A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting. Whenever a sales representative is not available to speak with the person answering the call, that person must receive, within two (2) seconds after the called person's completed greeting, a prerecorded identification message that states only the name and telephone number of the business, entity, or individual on whose behalf the call was placed, and that the call was for "telemarketing purposes." The telephone number so provided must permit any individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign.

---

[9] On appeal at the Third Circuit, Plaintiff argued that if the "called party" was only the intended recipient, "telemarketers would be able to routinely avoid liability by claiming that they had 'associated' a telephone number with a person other than the plaintiff." (Pl.-Appellant's Reply Br. at 4, No. 14-4073 (3d Cir. Mar. 20, 2015).) Now, after winning that appeal, Plaintiff seeks to avoid the *lack* of liability by claiming that the established business relationship exemption can only apply to the intended recipient of the call (here, Defendant's roommate).  Plaintiff cannot have it both ways.

[10] As discussed above, the March 11th Call contained a prerecorded message which stated: "This call is on behalf of Bank of America at 1-800-201-6872 for telemarketing purposes. We're sorry we missed you and we will try calling back at another time."  (D.E. 222-2 ¶ 7.)

[11] When Defendant moved for judgment on the pleadings in 2016 on the basis that the March 11th Call was exempt from the TCPA because it complied with abandoned call regulations, this Court denied the motion because "the Complaint [alleged] that the number provided in the message did not allow Plaintiff to 'make a do-not-call request during regular business [hours].'"  *Leyse v. Bank of Am.*, 2016 WL 5928683, at *6 (D.N.J. Oct. 11, 2016) (citing Compl. ¶¶ 12–16).  Following discovery, it is now clear that Plaintiff declined two opportunities to make a do-not-call request when he called the telephone number contained in the abandoned call message.  (D.E. 227-1 ¶¶ 30–31.)

47 C.F.R. § 64.1200(a)(6) (effective through May 12, 2005). Plaintiff alleges, however, that the Call became an unlawful "dual-purpose call" (*i.e.*, for both a lawful and unlawful purpose) when he called the number contained in the prerecorded message only to hear another prerecorded message containing the following "unsolicited advertisement" for a credit card:

> Thank you for calling about the Bank of America Credit Card. If you've already submitted your application, press 1. If you have questions about your existing Bank of America Credit Card, press 2. To complete your request for a Bank of America Credit Card, press 3. Press 4 if you would like to speak to a representative in reference to a call you received.

(FAC ¶¶ 12–15 (parenthetical numbering omitted); *see* D.E. 227 at 27–28.)

The "dual-purpose" doctrine does not apply to the abandoned call message that Plaintiff received. The applicable FCC order discusses dual-purpose calls in the context of "unsolicited advertisements" that contain both customer service and marketing elements. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14098–99 ¶ 142 (July 3, 2003) ("2003 FCC Order"). The 2003 FCC Order states that "[i]f the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." *Id.* However, the same order creates an exception for abandoned call messages that provide a number for call recipients to call and make a do-not-call request. *See id.* at 14108 ¶ 155 (comparing the exception to the Federal Trade Commission's "safe harbor" provision for similar messages). Plaintiff was able to do exactly that—when he called the number in the abandoned call message, he was able to speak to representatives who asked if he wished to make a do-not-call request, which he declined to do. (D.E. 227-1 ¶¶ 30–31.) The March 11th Call, therefore, did not violate the TCPA.[12]

---

[12] That the callback number presented other options related to a credit card application is not sufficient to remove the abandoned call message from the "safe harbor" provision. *See* 2003 FCC Order at 14108 ¶ 155 ("caution[ing] that additional information in the [abandoned call] prerecorded message constituting an unsolicited advertisement would

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED**. Defendant's Motion to Strike, Plaintiff's Motion to File a Second Amended Complaint, and Plaintiff's Motion for Class Certification are **DISMISSED AS MOOT**.[13, 14] An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Hon. Steven C. Mannion, U.S.M.J.
           Parties

---

be a violation of our rules" in calls made by the telemarketer to a consumer, but not cautioning similarly for calls made by the consumer to the telemarketer).

[13] Plaintiff moved to amend the FAC to change the proposed class period from December 5, 2007 through the present to October 1, 2003 through November 30, 2006 (or, alternatively, from March 11, 2005 through November 30, 2006). (*See* D.E. 231-1, 231-4.) The proposed change, if permitted, would not have affected the grounds on which this Court grants summary judgment.

[14] Under Rule 23(a), a class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"]." Rule 23(a); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590–91 (3d Cir. 2012). Under Rule 23(b)(3), a party seeking class certification must also "prove by a preponderance of the evidence that the class is ascertainable ["acertainability"]," that "questions of law or fact common to class members predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["superiority"]." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015); *see also Marcus*, 687 F.3d at 591–593; Rule 23(b)(3). This Court notes that, even if it did not grant summary judgment, it would not certify the proposed class. Among other deficiencies, the proposed class is rife with individualized issues such that questions common to the class do not predominate. For example, there are no records indicating that other putative class members heard a similar abandoned call message, called the number left in that message, and heard a prerecorded message similar to the one Plaintiff heard. For any such putative class members, an individualized inquiry would be needed to establish that they were not BoA customers at the time of the calls. Furthermore, Plaintiff's interest in receiving the March 11th Call in light of his work as a TCPA investigator for his counsel calls into question both the typicality of his claims and defenses and his adequacy as a class representative.